```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 11/20/20
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

Baisheng Chen,

                    Plaintiff,

          —v—

Chad Wolf, Acting Secretary, U.S. Department of
Homeland Security, *et al*.,

                    Defendants.

---

19-cv-9951 (AJN)

OPINION & ORDER

ALISON J. NATHAN, District Judge:

Plaintiff filed this action on October 28, 2019, seeking to compel the Secretary of the

Department of Homeland Security[1] and the Director of U.S. Citizenship and Immigration

Services ("USCIS") to schedule an asylum interview for Plaintiff and to adjudicate Plaintiff's

pending asylum application.  Dkt. No. 1.  Defendants have moved to dismiss the Amended

Complaint ("FAC") pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6).  Dkt. No.

23.  For the reasons stated below, Defendants' motion is GRANTED.

I.    BACKGROUND

Plaintiff Baisheng Chen, a citizen of China, alleges that while in China, he gained access

to the website for a pro-democracy organization in April 2009 and became involved in pro-

democracy activities.  Dkt. No. 17 ("FAC") ¶¶ 1–3.  In March 2011, Chinese authorities

searched the Plaintiff's home and questioned and took custody of the Plaintiff on suspicion of his

---

[1] Plaintiff's Complaint listed former Acting Secretary of Homeland Security Kevin McAleenan
as a Defendant. Defendant McAleenan is automatically substituted for Acting Secretary of
Homeland Security Chad Wolf.  Fed. R. Civ. P. 25(d).

access to and participation in pro-democracy online activity. *Id.* ¶¶ 4–6. Authorities also questioned the Plaintiff about his Christian faith. *Id.* ¶ 7.

Plaintiff alleges that over the next few years, he received suspicious emails purporting to be from the leader of his pro-democracy organization; Plaintiff suspected they were from Chinese authorities, and he became fearful of investigation and action by the Chinese government. *Id.* ¶¶ 9–10. The Plaintiff entered the United States on April 28, 2016 on a B-2 visa with his wife and daughter and has been residing in New York City since then, where he has been able to resume his participation in the pro-democracy organization and practice his Christian faith. *Id.* ¶¶ 1, 11–12.

On June 14, 2016, Plaintiff and his family applied for asylum on a Form I-589 application with the United States Citizenship and Immigration Services ("USCIS"); he received a receipt from USCIS dated June 24, 2016. *Id.* ¶ 1. While the application has remained pending, Plaintiff has been permitted to remain in the United States and apply for employment authorization. *Id.* ¶¶ 11–12, 20, 31–32. According to Plaintiff, he has since made two efforts— on September 17, 2019 and September 18, 2019 to follow-up with USCIS; USCIS, however, has failed to schedule an asylum interview with him. *Id.* ¶¶ 14–17. On October 28, 2019, three years and four months after he filed an asylum application, Plaintiff filed the Complaint now before this Court. *Id.* ¶ 20. Plaintiff alleges that USCIS has employed a "last-in, first-out" model of processing asylum applications in which USCIS resolves the most recently filed applications first, which Plaintiff argues has unreasonably delayed the adjudication of his application. *Id.* ¶¶ 18–20, 36–37.

Plaintiff brings this action for declaratory judgment and equitable relief against Defendant Chad Wolf,[2] Acting Secretary of the U.S. Department of Homeland Security, and Kenneth Thomas Cuccinelli II, Acting Director of USCIS.  Plaintiff alleges that Defendants have failed to timely interview Plaintiff or adjudicate his application, and that in doing so they have violated the Administrative Procedure Act, 5 U.S.C. §§ 701-706, and Plaintiff's Fifth Amendment Due Process rights. *Id.* ¶¶ 39–52.  Plaintiff also seeks mandamus relief under 28 U.S.C. § 1361 to remedy USCIS's failure to perform its nondiscretionary official administrative duties and obligations under the Immigration and Nationality Act, 8 U.S.C. § 1158(d)(5). *Id.* ¶¶ 53–57.

Defendants have moved to dismiss the Complaint pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure or, alternatively, for summary judgment pursuant to Rule 56.  Dkt. No. 25 at 1.

## II.  LEGAL STANDARD

A Rule 12(b)(1) motion is a threshold challenge to this Court's subject-matter jurisdiction. Federal courts are courts of limited jurisdiction. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).  "[A] claim is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Morrison v. Nat'l Austl. Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) (citation omitted).  When resolving a Rule 12(b)(1) motion, "[t]he court must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of plaintiff," but "jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it." *Id.* (citations and internal quotation

---

[2] As noted above, the filings list Kevin McAleenan, the then-Acting Secretary.

marks omitted).  "A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists."  *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000); *see also Whitmore v. Ark*, 495 U.S. 149, 154 (1990) ("It is well established . . . that before a federal court can consider the merits of a legal claim, the person seeking to invoke the jurisdiction of the court must establish the requisite standing to sue.").  "[U]nder Rule 12(b)(1), [a court is] permitted to rely on non-conclusory, non-hearsay statements outside the pleadings." *M.E.S., Inc. v. Snell*, 712 F.3d 666, 671 (2d Cir. 2013).  And "a facially sufficient complaint may be dismissed for lack of subject matter jurisdiction if the asserted basis for jurisdiction is not sufficient." *Frisone v. Pepsico Inc.,* 369 F. Supp. 2d 464, 469 (S.D.N.Y.2005) (citation omitted). *See also Lleshi v. Kerry*, 127 F. Supp. 3d 196, 199 (S.D.N.Y. 2015).

For a complaint to survive a motion to dismiss under Rule 12(b)(6), meanwhile, it must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Therefore, a claim is properly dismissed at this stage if the plaintiff fails to plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* at 678.

## III.   DISCUSSION

### A.  Subject Matter Jurisdiction

#### a.   Mandamus Act

Defendants first contend that this Court lacks jurisdiction over Plaintiff's claim brought under the Mandamus Act.  The Court agrees.

The Mandamus Act provides that "[t]he district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361. To obtain relief, a plaintiff must establish that "(1) there is a clear right to the relief sought; (2) the Government has a plainly defined and peremptory duty to perform the act in question; and (3) there is no other adequate remedy available." *Benzman* v. *Whitman*, 523 F.3d 119, 133 (2d Cir. 2008). Defendants argue that no subject matter jurisdiction exists under the Mandamus Act because Plaintiff is unable to establish that he has a clear right to the requested relief or that he is owed a duty to have his asylum application reviewed under the time-frames set forth in 8 U.S.C. § 1158(d)(5)(A)(ii) and § 1158(d)(5)(A)(iii). *See* Dkt. No. 25 at 11–15. In support, they point to 8 U.S.C. § 1158(d)(7), which provides that "[n]othing in this subsection shall be construed to create any substantive or procedural right or benefit that is legally enforceable by any party against the United States or its agencies or officers or any other person." Plaintiff counters that the "statutory right for an alien to apply for asylum *necessarily embodies* the right to seek a proper adjudication of his asylum application within these statutory periods prescribed under 8 U.S.C. Sections 1158(d)(5)(A)(ii) and (iii)." Dkt. No. 26 at 5 (emphasis added). And he argues that to interpret § 1158(d)(7) to preclude a right to enforce the timeframes contained in §§ 1158(d)(5)(A)(ii) and (iii) would infringe on the statutory right to apply for asylum as provided in 8 U.S.C. § 1158(a). *See id.* at 3–7. That is, Plaintiff argues that because a statutory right to seek asylum exists under § 1158(a), a corollary right to enforce the timing provisions elsewhere in the section must, by necessity, exist. *Id.* He also contends that the Court should interpret § 1158(d)(7) narrowly, finding that it only precludes mandating the grant of asylum but not enforcement of the statute's timing provisions. *Id.* at 6. Among other things, he points to the use

5

of the word "shall" in the timing provisions.  *Id.* at 5–6.  None of Plaintiff's arguments are persuasive.

This Court agrees with "the chorus of other courts across the country" that have concluded that "§ 1158(d)(7) of the INA bars Plaintiff from claiming any legally enforceable right to have [his] application[] adjudicated within the provided timeframes."  *Fangfang Xu v. Cissna*, 434 F. Supp. 3d 43, 56 (S.D.N.Y. 2020) (citation and internal quotation marks omitted). Admittedly, a minority of courts have found that § 1558(d)(7) does not bar plaintiffs from claiming a legally enforceable right.  *See, e.g.*, *Varol v. Radel*, 420 F. Supp. 3d 1089, 1096 (S.D. Cal. 2019).  As the *Xu* court noted, however, "[i]t is beyond serious dispute that mandamus pursuant to § 1361 is unavailable to compel compliance with a statutory obligation when the underlying statute expressly disclaims a private right of action," and "§ 1361 provides the Court with jurisdiction over mandamus actions only where the plaintiff seeks to compel an agent of the United States to perform a duty *owed to the plaintiff*."  *Id.* (citations and internal quotation marks omitted) (emphasis in original).   The Mandamus Act requires that "there is a clear right to the relief sought," *Benzman*, 523 F.3d at 133, and because the statute in question expressly and unambiguously asserts that the procedural provisions do not "create any substantive or procedural right or benefit that is legally enforceable," 8 U.S.C. § 1158(d)(7), the Court is persuaded that no clear right exists.  *See Ying Yu Liu v. Wolf*, No. 19-CV-410 (PGG), 2020 WL 2836426, at *10 (S.D.N.Y. May 30, 2020) ("Because Section 1158(d) does not create a legally enforceable right or benefit, Defendants do not owe Plaintiff a duty to adjudicate her application within the time frames provided in § 1158(d).  There is thus no clear right to the relief sought[,] and this Court lacks subject matter jurisdiction over Plaintiff's claim for mandamus relief. (citations and internal quotation marks omitted)); *see also Ghali v. Radel*, No. 18-CV-508 (AJB)

(RBB), 2019 WL 1429583, at *2 (S.D. Cal. Mar. 29, 2019); *Alaei v. Holder*, No. 15-CV-8906 (ODW) (JPRx), 2016 WL 3024103 (C.D. Cal. May 26, 2016); *Pesantez v. Johnson*, No. 15-CV-1155 (BMC), 2015 WL 5475655 (E.D.N.Y. Sept. 17, 2015).

Plaintiff's attempts to circumvent § 1158(d)(7) are unconvincing. Most notably, Plaintiff provides no authority to support the contention that the right to seek asylum necessarily entails the purported right to enforce certain procedural timing requirements. As Defendants point out, these issues are in fact meaningfully distinct. *See* Dkt. No. 27 at 2–3. And the lack of a right to enforce the timing provisions does not, as Plaintiff suggests, infringe on the right to seek asylum contained in § 1158(a)(1). Nor is the use of the word "shall" in the timing provisions of much significance, as § 1158(d)(7) specifically disclaims the idea that the procedural provisions contained in subsection (d) confer any kind of judicially enforceable right. *See L.M.* v. *Johnson*, 150 F. Supp. 3d 202, 211 (E.D.N.Y. 2015). Moreover, Plaintiff's attempt to reinvent § 1158(d)(7) to preclude only enforcement of a right to be granted asylum is undermined by the statutory structure; § 1158(d)(7) specifically indicates that it applies only to subsection (d), which sets forth asylum *procedures* and does not address, in any way, the substantive question of whether asylum shall be granted.

In sum, for subject matter jurisdiction to exist under the Mandamus Act, Plaintiff must establish that he has a "clear right to the relief sought." *Benzman*, 523 F.3d at 133. But where, as here, the statute itself specifically provides that the timing provisions do not "create any substantive or procedural right or benefit," 8 U.S.C. § 1158(d)(7), Plaintiff cannot make a showing that he has a right—let alone a clear right—to the requested relief. As such, the Court lacks jurisdiction to hear Plaintiff's Mandamus Act claim, and the claim is accordingly DISMISSED.

### b.  Subject Matter Jurisdiction and the APA

Defendants also contend that this Court lacks jurisdiction to hear Plaintiff's claim under

the APA.  They argue that 8 U.S.C. § 1158(d)(7) also precludes review under the APA because 5

U.S.C. § 701(a)(1) provides that the judicial review provisions of the APA do not apply to the

extent that another statute precludes judicial review.  Dkt. No. 25 at 16 (citing *Shabaj v. Holder*,

718 F.3d 48, 52 (2d Cir. 2013).  And they point out that in *Xu*, Judge Failla noted that "the Court

would lack subject matter jurisdiction over an APA claim premised on an agency's failure to

abide by § 1158(d)'s timing directives."  Dkt. No. 25 at 17 (citing *Xu*, 434 F. Supp. 3d at 52)).

They further contend that "[h]ere, plaintiff's APA claim is premised on the time frame laid out in

§ 1158(d)," and they argue that, as a result, § 1158(d)(7) bars Plaintiff's APA claim, as well.

Dkt. No. 25 at 17.  The Court is unpersuaded.

It's true that, at times, Plaintiff's briefing appears to rely on the timeframes provided by

subsection (d) as the lynchpin of their APA claim.  But the Court disagrees with Defendants that

Plaintiff's APA claim is premised *exclusively* on the timeframes laid out in § 1158(d).  In making

his APA argument, Plaintiff also cites various provisions of the APA—namely 5 U.S.C. § 555(b)

and 5 U.S.C. § 706(1)—that themselves address unreasonable delays.  *See, e.g.*, Dkt. No. 26 at

10.  In light of the ambiguity as to whether Plaintiff is, in fact, basing his APA claim entirely on

the timing directives contained in 8 U.S.C. § 1158(d) or whether he was also invoking the APA

delay provisions, the Court construes Plaintiff as raising both arguments.

As Judge Gardephe recently explained, "[t]he APA in conjunction with the federal

question statute, 28 U.S.C. § 1331, may provide a jurisdictional basis," and "when a plaintiff

alleges that a defendant violated the APA, a court may exercise subject matter jurisdiction

pursuant to 28 U.S.C. § 1331."  *Liu*, 2020 WL 2836426, at *6 (citations and internal quotation

marks omitted).  That is, while it is true that "Plaintiff has no statutory right to sue Defendants based upon their failure to adjudicate her asylum claim within the time frame laid out in § 1158(d)" and that "the Court would lack subject matter jurisdiction over such a claim," *Xu*, 434 F. Supp. 3d at 52, to the extent that Plaintiff's APA claim is based on the separate claim that Defendants are in violation of 5 U.S.C. § 555(b) and § 706(1), the Court retains jurisdiction over such a claim.

Section 555(b) of the APA provides that, "[w]ith due regard for the convenience and necessity of the parties or their representatives and within a reasonable time, each agency shall proceed to conclude a matter presented to it."  5 U.S.C. § 555(b).  Section 706(1) of the APA, meanwhile, states that a reviewing court shall "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1).  In similar cases, multiple courts in this Circuit have found that § 1158(d)(7) does not preclude a Plaintiff from invoking these APA provisions when seeking to challenge agency delays in processing asylum requests.  *See Ying Yu Liu v. Wolf*, No. 19-CV-410 (PGG), 2020 WL 2836426, at *6–7 (S.D.N.Y. May 30, 2020); *Xu*, 434 F. Supp. 3d at 52  ("[Section] 1158(d)(7) is not so broad as to strip Plaintiff of her right to challenge all delays in the adjudication of her asylum application, no matter how egregious."); *Pesantez v. Johnson*, No. 15-CV-1155 (BMC), 2015 WL 5475655, at *4 (E.D.N.Y. Sept. 17, 2015) ("The conclusion that no relief is available to plaintiff via the Mandamus Act does not end the inquiry, because I must also consider her allegations of agency inaction under the Administrative Procedure Act, which provides individuals with a cause of action when agency adjudication has been unreasonably delayed.").  This Court agrees.  And as a result, to the extent Plaintiff's claim can be construed as raising an APA argument separate from one seeking to enforce the timing directives of the INA, the Court holds that it has subject matter jurisdiction to hear such a claim.

**B.  Plaintiff has failed to state a claim under the APA.**

The Court next turns to whether Plaintiff has stated a viable claim under the APA.  The Court concludes that he has not.

As already noted, the APA provides for judicial review of an agency action that is either not completed "within a reasonable time," or is "unreasonably delayed." 5 U.S.C. §§ 555(b), 706(1).  "The Supreme Court has held that evidence of the passage of time cannot, standing alone, support [a claim for unreasonably delayed administrative action]." *Espin* v. *Gantner*, 381 F. Supp. 2d 261, 266 (S.D.N.Y. 2005) (citing *INS* v. *Miranda*, 459 U.S. 14, 19 (1982)). Instead, courts recognize that "[r]esolution of a claim of unreasonable delay is ordinarily a complicated and nuanced task requiring consideration of the particular facts and circumstances before the court." *Mashpee Wampanoag Tribal Council, Inc.* v. *Norton*, 336 F.3d 1094, 1100 (D.C. Cir. 2003).  In determining reasonableness, then, courts first look to "the source of delay — *e.g.*, the complexity of the investigation as well as the extent to which the defendant participated in delaying the proceeding." *Reddy* v. *CFTC*, 191 F.3d 109, 120 (2d Cir. 1999).  In addition, courts also apply the six factors set forth in *Telecommunications Research and Action Center* v. *FCC*, 750 F.2d 70, 80 (D.C. Cir. 1984) ("*TRAC*," and the "*TRAC* factors"): "(1) the time agencies take to make decisions must be governed by a rule of reason; (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason; (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake; (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority; (5) the court should also take into account the nature and extent of the interests prejudiced by delay; and (6) the court need not find any

10

impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed." *TRAC*, 750 F.2d at 80 (citations and internal quotation marks omitted); *see also Xu*, 434 F. Supp. 3d at 51 (applying the *TRAC* factors to the asylum application adjudication context); *L.M.* v. *Johnson*, 150 F. Supp. 3d 202, 206–07, 213–14 (E.D.N.Y. 2015); *Boussana* v. *Johnson*, No. 14-CV-3757 (LGS), 2015 WL 3651329, at *8 (S.D.N.Y. June 11, 2015).

The Court agrees with Defendants' contention that the USCIS's adoption of the Last In, First Out ("LIFO") rule provides a rule of reason governing the processing of asylum applications. *See* Dkt. No. 25 at 19–20. Both parties agree that the LIFO rule is substantially responsible for the delay of the adjudication of Plaintiff's application, though they disagree about whether the LIFO rule constitutes a rule of reason for the delay. *See* FAC ¶ 51; Dkt. No. 25 at 19–20; Dkt. No. 26 at 14–17. As Defendants point out, the adoption of the LIFO scheduling system, along with other measures taken by the agency (including hiring more asylum officers), was meant to address the backlog of cases. *See* Dkt. No. 25 at 20. Analyzing the context as a whole, the Court agrees with Judge Failla and Judge Gardephe that the LIFO rule was "a reasoned response to a systemic crisis," *Xu*, 434 F. Supp. 3d at 53, and that it satisfies the first *TRAC* factor. *See also Liu*, 2020 WL 2836426, at *8 ("The Court concludes that the delayed adjudication of Plaintiffs' asylum applications, while regrettable, is not the product of a lack of diligence by either Plaintiffs or Defendants. 'Rather, the delay was the result of the LIFO rule, which was itself a reasoned response to a systemic crisis.'" (citation omitted)).

Plaintiff nonetheless argues that the LIFO rule cannot provide a rule of reason for the delay due to the existence of the INA's timing provisions, which goes to the second *TRAC* factor. Dkt. No. 26 at 15–16. The second *TRAC* factor provides that where Congress has set a timetable, "that statutory scheme may supply content for this rule of reason." *TRAC*, 750 F.2d at

11

80.  But here, too, the INA's timing provisions must be read in conjunction with § 1158(d)(7).

As the weight of authority on this issue has found, the timetables contained in § 1158(d)(5)(A)

do not interfere with finding that the LIFO rule provides a rule of reason, insofar as Congress's

decision not to structure the statute as creating a procedural right or benefit to enforce the

timetables rendered them non-binding.  *See, e.g.*, *Xu*, 434 F. Supp. 3d at 53 (noting that §

1158(d)(5)(A) does not preclude finding that the LIFO rule provides a rule of reason); *Liu*, 2020

WL 2836426, at *8 (same); *Liuqing Zhu v. Cissna*, No. CV 18-9698 PA (JPRx), 2019 WL

3064458, at *4 (C.D. Cal. Apr. 22, 2019) (same); *Varol*, 2019 WL 5394628, at *5 ("While the

statutory guidelines provide a clear expectation that the initial interview should commence

within 45 days – with a final adjudication to be completed within 180 days – the plain language

of 8 U.S.C. § 1158(d)(5)(A) clarifies that the timing requirements are not mandatory.").

The third and fifth *TRAC* factors "require the Court to examine the nature of the interests

prejudiced by delayed agency adjudication." *Liu*, 2020 WL 2836426, at *9.  Plaintiff contends

that he has an interest in "seeing his asylum application timely adjudicated."  Dkt. No. 26 at 16.

With respect to the third *TRAC* factor, however, Plaintiff has not meaningfully pleaded any facts

that human health and welfare are at stake in the delay.  *See generally* Dkt. No. 26; *see also* Dkt.

No. 27 at 7.  The Court notes that "while Plaintiff's asylum application is pending, [he] is

permitted to live in the United States without fear of being removed to [his] home country before

the final adjudication of [his] asylum application, and can even apply for employment

authorization during the pendency of the application. . . . Accordingly, the risk to human health

and welfare and potential prejudice to Plaintiff resulting from delay in the processing of [his]

asylum application favors denying relief." *Zhu*, 2019 WL 3064458, at *4 (citing 8 U.S.C. §

1158(d)(2); 8 C.F.R. § 208.7(a)); *see also* 8 C.F.R. § 208.5(a).  The amended complaint does

aver that "Mr. Chen has become increasingly concerned over his own safety and that of his family, particularly the safety of his own parents still living in China due to well documented country conditions in China that have dramatically worsened since he left China in 2016," FAC ¶ 37, but Plaintiff does not otherwise explain the basis of his concern or how the delay in his application exacerbates that concern.  Rather, to the extent that the complaint alleges such a nexus, it is conclusory.  *See Iqbal*, 556 U.S. at 681.  Thus, even after drawing all reasonable inferences in Plaintiff's favor, his asserted interest does not rise to the level contemplated in the third *TRAC* factor.  *See Alaei v. Holder*, No. 215-CV-08906 (ODW) (JPRx), 2016 WL 3024103, at *3 (C.D. Cal. May 26, 2016) ("[T]here is no human health and welfare at stake in the delay as Plaintiff can legally live and work in the United States pending adjudication of her application."). In addition, while Plaintiff's interest is not insubstantial, delays in the processing of asylum applications are "inherent in the asylum application process; worthy applicants are not entitled to benefits until their applications have been assessed and approved." *Liu*, 2020 WL 2836426, at *9.  As a result, in applying the fifth *TRAC* factor, the Court concludes that the nature and extent of the interests prejudiced by the delay are not so significant as to tilt the fifth factor in Plaintiff's direction.  *See Alaei*, 2016 WL 3024103, at *3 ("The fifth factor requires substantially the same analysis as the third factor, [and] also favors Defendants.").

The fourth *TRAC* factor, meanwhile, strongly favors Defendants.  Courts have "refused to grant relief, even though all the other factors considered in TRAC favored [relief], where 'a judicial order putting [an individual] at the head of the queue would simply move all others back one space and produce no net gain.'" *Mashpee Wampanoag Tribal Council, Inc. v. Norton*, 336 F.3d 1094, 1100 (D.C. Cir. 2003) (quoting *In re Barr Labs., Inc.*, 930 F.2d 72, 75 (D.C. Cir. 1991)).  Indeed, under the fourth *TRAC* factor, it is appropriate to "'refuse[] to grant relief, even

13

though all the other factors considered in *TRAC* favor[] it, where a judicial order putting the petitioner at the head of the queue would simply move all others back one space and produce no net gain.'" *L.M.*, 150 F. Supp. 3d at 213 (quoting *Mashpee Wampanoag Tribal Council*, 336 F.3d at 1100).  Here, granting Plaintiff the relief he seeks would simply advance his application ahead of many others, including those of applicants who have been waiting as long, or longer, than Plaintiff.  And "[t]he effect of leapfrogging Plaintiff's application to the front of the line would do nothing to cure the deficiencies of the asylum application process; it would only harm other applicants, who are equally deserving of prompt adjudication."  *Xu*, 434 F. Supp. 3d at 55. As a result, granting Plaintiff's requested relief "would undermine USCIS's ability to achieve the goal that motivated it to adopt the LIFO rule," and, as the *Xu* court noted, "might have the perverse effect of "incentiviz[ing] defendants to prioritize those asylum applicants who have the wherewithal to retain private counsel and to bring suit in District Court."  *Id.* (quoting *Pesantez*, 2015 WL 5475655, at *4).  In this regard, the fourth *TRAC* factor counsels strongly against granting Plaintiff's request, as doing so would have significant negative effects "on agency activities of a higher or competing priority."  *TRAC*, 750 F.2d at 80.

        All told, after applying the *TRAC* factors to the current case, the Court concludes that Plaintiff has not alleged facts sufficient to demonstrate that the adjudication of his asylum application has been unreasonably delayed, as he would have had to do to state a claim under the APA.  So while Plaintiff's frustration is understandable, he has not provided support for the proposition that he is entitled to judicial relief.  Accordingly, Plaintiff's APA claim is DISMISSED.

### C. Declaratory Judgment Act

Defendants also move to dismiss Plaintiff's "Declaratory Judgment Act claim," though the Amended Complaint does not cite or mention the Declaratory Judgment Act.  Dkt. No. 25 at 23.  In his opposition, Plaintiff failed to respond to this argument.  *See generally* Dkt. No. 26. "This Court may, and generally will, deem a claim abandoned when a plaintiff fails to respond to a defendant's arguments that the claim should be dismissed."  *Lipton v. Cty. of Orange, NY*, 315 F. Supp. 2d 434, 446 (S.D.N.Y. 2004); *see also Felix v. City of New York*, 344 F. Supp. 3d 644, 654–55 (S.D.N.Y. 2018) (citing *Lipton*); *Romeo & Juliette Laser Hair Removal, Inc. v. Assam I LLC*, No. 08-CV-442 (TPG), 2014 WL 4723299, at *7 (S.D.N.Y. Sept. 23, 2014) ("At the motion to dismiss stage . . . a plaintiff abandons a claim by failing to address the defendant's arguments in support of dismissing that claim.").  Accordingly, to the extent Plaintiff pleaded a claim under the Declaratory Judgment Act, that claim is DISMISSED.

### D. Due Process Clause

Similarly, while Plaintiff does not state a separate claim under the Due Process Clause, the Amended Complaint mentions the Due Process Clause in Count I, which relates to the Administrative Procedure Act.  *See* FAC at 12.  Defendants move to dismiss Plaintiff's Due Process Claim.  *See* Dkt. No. 25 at 24–25.  In his opposition, Plaintiff failed to respond to this argument.  *See generally* Dkt. No. 26.  As noted above, "[t]his Court may, and generally will, deem a claim abandoned when a plaintiff fails to respond to a defendant's arguments that the claim should be dismissed."  *Lipton*, 315 F. Supp. 2d at 446.  As such, to the extent that Plaintiff intended to state a claim under the Due Process Clause, that claim is DISMISSED.[3]

---

[3] In any event, had Plaintiff opposed Defendants' argument, the Court would still dismiss this claim.  As the *L.M.* court explained when confronted with a similar argument, "Plaintiffs have failed adequately to allege a due process violation. . . . Section 1158(d)(7) explicitly disclaims the creation of any enforceable substantive or procedural right or benefit.  Accordingly, Plaintiffs

## IV.    CONCLUSION

For the reasons stated above, Defendants' motion to dismiss is GRANTED.[4]  This resolves Dkt. Nos. 11 and 23.  The Clerk of Court is respectfully directed to enter judgment and to close the case.

SO ORDERED.

Dated:  November 20, 2020
New York, New York

_____
ALISON J. NATHAN
United States District Judge

---

have suffered no cognizable deprivation of rights." *L.M.*, 150 F. Supp. 3d at 217 (citation and internal quotation marks omitted).  In addition, "courts that have considered delays in the immigration context that far surpass the two-year delays alleged by Plaintiffs have rejected due process claims." *Id.* (collecting cases).  Thus, Plaintiff's Due Process Clause argument would lack merit.
[4] Defendants' motion to dismiss the original complaint, Dkt. No. 11, is denied as moot.

16